**Ronald Keith MITCHELL, Appellant,**

v.

**STATE of Texas, Appellee.**

No. C14–83–188–CR.

Court of Appeals of Texas, Houston (14th Dist.).

July 19, 1984.

Rehearing Denied Sept. 13, 1984.

James Gregory Glass, Houston, for appellant.

Calvin Hartmann, Houston, for appellee.

Before JUNELL, MURPHY and SEARS, JJ.

## OPINION

SEARS, Justice.

Appellant was convicted of attempted capital murder in the course of committing aggravated rape under TEX.PENAL CODE ANN. § 19.03(a)(2) (Vernon 1974), and was sentenced to fifty years confinement. We affirm.

The complainant, Williamette Taylor, testified that on May 23, 1982, Appellant and another man approached her in a car driven by Appellant. He offered her a ride and she accepted. Appellant drove her to a party, and after a short while she and Appellant left. Appellant then took her to his brother's apartment and to other friends' apartments. She asked to be taken home. Appellant ignored her request, drove her to a deserted alley and began kissing her. She tried to stop him and again pleaded to be taken home. He told her to shut up and that she knew what would happen when she accepted the ride.

Appellant then ordered her to disrobe. She refused twice. At that point he said "I'm not going to ask you again, because if you don't, I'm going to reach for the glove compartment." She testified that she believed that he had a weapon. Taylor tried to escape but Appellant grabbed her arm, ripped off her clothes and forced her into the back seat. Appellant put his hands around her throat, choking her so that she could not breathe, while he raped her. He told her that she had "better make it good" because the next thing he would do would be to put her on the hood and engage in fellatio. After he raped her in the car, he pulled her out of the car, threw her onto the hood, laid on his back and ordered her to get on top of him. She obeyed because Appellant told her that he would hate to "mess up" her pretty face.

While on the hood of the vehicle, Taylor hit Appellant in the face and attempted to escape. He caught her, grabbed her by the hair and the arm, dragged her back to the car and told her he was going to kill her. He grabbed her hair and threw her face on the hood twice. Then he turned her over and hit her in the stomach, spread her legs apart as if he were trying to break them, hit her in the face with his fist, rolled her over on to her stomach again and hit her

with both fists in the back. He then got back into the car, drove the vehicle over her, turned around, drove over her a second time and then sped away. Taylor was left naked and severely injured. She testified that she could see the car approaching her before it ran over her, but could not move out of its way because of the severe beating she had sustained.

After laying on the ground for a few minutes, she climbed a fence and walked to the highway. She stated that she walked along the highway for approximately thirty minutes before a man stopped to help her. He told her to stay where she was and he would return with help. He returned with another man in a van, wrapped her in a quilt and took her to the nearest fire station. An emergency medical technician examined her and transferred her to Del Oro Hospital, where she stayed for three weeks. Her admission statement at Del Oro recorded that she had been raped and a rape kit was used to examine her.

An officer on the Sex Crimes Unit of the Houston Police Department's Homicide Division was assigned to the case one or two days after the crime occurred. He contacted complainant May 31, however she was unable to talk well on that date because her jaw had been fractured and surgically wired shut. She did manage to describe Appellant, the car he drove, where she thought he lived and the general location where the crime occurred. Although she did not tell the officer Appellant's name, she had told her brother two days after the event that a man named "Ron" had attacked her.

She spoke with the officer again on June 6 and described her ordeal in more detail and soon led the officer to many of the locations she had travelled with Appellant. Appellant, accompanied by his lawyer, surrendered to the police on June 16.

■ In grounds of error one through three, Appellant argues there was either no evidence or insufficient evidence to support his conviction. Appellant specifically argues that all of the aggravating elements occurred *after* the rape and, consequently,

the State did not prove that Appellant was "in the course of committing" or attempting to commit aggravated rape when he attempted to kill Taylor.

A similar fact pattern and argument is found in *Wooldridge v. State*, 653 S.W.2d 811 (Tex.Crim.App.1983) (en banc). Wooldridge was convicted of capital murder in the course of committing aggravated rape. In that case, as in ours, the murder/attempted murder occurred after the rape was completed. That court held that "conduct occurring in an attempt to commit, during the commission, or in the immediate flight after the attempt or commission of the offense" occurs "in the course of committing" an offense listed in TEX. PENAL CODE ANN. § 19.03(a)(2) (Vernon 1974). *Id.* at 816. The court concluded that such conduct was exactly what the legislature intended to proscribe by enacting § 19.03(a)(2). *Id.* We agree. The fact that Appellant did not actually attempt to kill Taylor until after he raped her is of no consequence. We overrule Appellant's first three grounds of error.

■ In ground of error four, Appellant complains the trial judge erred by refusing his requested instruction on the "time lapse" between the incident and the outcry. Appellant claims that TEX.CODE CRIM. PROC.ANN. art. 38.07 (Vernon 1979), mandates such an instruction. Article 38.07 states

A conviction under Chapter 21, Penal Code, is supportable on the uncorroborated testimony of the victim of the sexual offense if the victim informed any person, other than the defendant, of the alleged offense within six months after the date on which the offense is alleged to have occurred. The court shall instruct the jury that the time which lapsed between the alleged offense and the time it was reported shall be considered by the jury only for the purpose of assessing the weight to be given to the testimony of the victim.

We hold Appellant was not entitled to the instruction because there was no unex-

plained delay in her outcry. One of the men who rescued her testified that "all she could do was mumble" and that he could not understand her. In addition, the emergency medical technician testified that she was slipping into shock as a result of blood loss. She was unable to make immediate outcry because of the severe beating she sustained.

It is unclear when Taylor first made an outcry, although her hospital admission papers note that she had been raped and she was examined with the standard rape kit. Further, it is undisputed that as soon as she was able to talk she did announce that she had been raped. Thus, a time lapse, as contemplated by art. 38.07, i.e., *unexplained* delay, did not occur. Further, Appellant was convicted under Chapter 19 of the Penal Code. Article 38.07 applies only to convictions under Chapter 21. Ground of error four is overruled.

■ Grounds of error five through ten concern alleged errors in the abstract definitions in the charge. In ground of error eleven, Appellant argues that he should have been tried under the special aggravated rape statute instead of under the general criminal attempt statute. Each of these alleged errors is presented for the first time on appeal and none of them involves fundamental error. We overrule grounds of error five through eleven. *See Lewis v. State*, 656 S.W.2d 472 (Tex.Crim.App.1983) (en banc); *Livingston v. State*, 524 S.W.2d 655, 657 (Tex.Crim.App.1976), *cert. denied*, 431 U.S. 933 (1977).

■ We feel it necessary to mention one argument raised in ground of error seven. One of the definition paragraphs in the charge reads:

A person commits aggravated rape if he commits rape, as defined above, and he;
   (1) causes serious bodily injury *or attempts to cause serious bodily injury*
. . .

Appellant argues that the definition of aggravated rape was erroneous and that because the application paragraph referred back to the definition, the application paragraph was also in error. In other words, Appellant argues the charge authorized a conviction for acts which do not constitute aggravated rape, i.e., an "attempt to cause serious bodily injury."

We share Appellant's concern over the erroneous definition and its possible consequence but do recognize that fundamental error attaches to error in the application paragraph while it does not so attach to error in the definition paragraph. However, the average juror knows no distinction between the "application" paragraph and the "definition" paragraph. The entire charge is the law by which the juror must be guided. The distinction between the paragraphs seems to have been applied by courts without considering the equal impact each paragraph of the charge has on the juror. If the application paragraph refers to a definition, and cannot be understood or applied without applying the definition, then the definition should be said to become part of the application paragraph.

Under the facts of this case, though, the jury could not have found an "attempt" to cause serious bodily injury; Appellant's acts went far beyond a mere "attempt" to injure. Since the serious bodily injury suffered by complainant at the hands of Appellant was proven beyond a reasonable doubt, *see Dixon v. State*, 639 S.W.2d 9, 12 (Tex.App.—Dallas 1982, no pet.), the error, if any, was harmless.

Each ground of error is overruled and the conviction is affirmed.